IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DOES, T.B. and D.B., individually and**                      **PLAINTIFFS**
**as parents and next friends of C.B.**

v.                **CASE NO. 4:20-CV-00104-BSM**

**JOHNNY KEY,** *et al.*                                                   **DEFENDANTS**

## ORDER

Plaintiffs' motion for judgment on the record [Doc. No. 25] is denied. The hearing officer's decision is affirmed with respect to plaintiffs' Individuals with Disabilities Education Act ("IDEA") claim. Plaintiffs' Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("section 504") claims are precluded by resolution of the IDEA claim and dismissed with prejudice. Plaintiffs' claim under 42 U.S.C. § 1983 ("section 1983") is not precluded and allowed to proceed.

### I. PROCEDURAL BACKGROUND

The Does are the parents of C.B. and seek judicial review of a due process administrative decision under the IDEA, 20 U.S.C. § 1400 et seq. Compl. ¶¶ 1–3, Doc. No. 1. The Does originally brought a due process complaint against the Bentonville School District ("District") before the Arkansas Department of Education ("ADE"). *Id.* ¶ 11. The Does argued that the District denied C.B. a free and appropriate public education ("FAPE") under the IDEA. *Id.* The hearing officer ruled against the Does and found that the District did not deny a FAPE to C.B. *Id.* ¶ 13.

The Does are now suing the District and Secretary of the ADE Johnny Key, alleging C.B. was in fact denied a FAPE under the IDEA. *Id*. ¶¶ 11–30. Additionally, the Does assert claims under section 1983, the ADA, and section 504. *Id*. ¶¶ 31–50. Defendants filed separate motions to dismiss [Doc. Nos. 3 and 10], both of which were denied. Doc. No. 14. The parties later requested that I review the administrative record on the IDEA claim prior to them moving forward with discovery on the section 1983, ADA, and section 504 claims, due to the potential preclusive effect of a ruling on the IDEA claim. *See* Doc. No. 19 at 2. The parties' request for this bifurcated review process was granted. Doc. No. 24. The Does now move for judgment on the administrative record with respect to their IDEA claim. Doc. No. 25.

## II. FACTUAL BACKGROUND

C.B. is a child with autism. Pls.'s Facts ¶ 1, Doc. No. 27. He was enrolled as a student in the District from kindergarten through the second grade. *Id.* Before entering kindergarten, an independent speech therapist evaluated C.B. and diagnosed him with mixed receptive-expressive language disorder and other developmental disorders. Admin. R. on Appeal at 1029, Doc. No. 23. C.B. was also diagnosed with specific developmental disorder of motor function and other disorders of psychological development by an independent occupational therapist. *Id*. at 1093. In May 2016, the District developed an Individualized Education Program ("IEP") for C.B.'s kindergarten year that included ninety minutes per week of special education in the form of speech therapy, and sixty minutes per week of

occupational therapy. *Id.* at 855.

C.B. was diagnosed with autism in September 2016. *Id.* at 976. In response, the District revised C.B.'s disability category to autism and amended his IEP to provide 690 minutes per week of special education, which included speech and adaptive behavior therapy. *Id.* at 923, 886. The revised IEP also provided sixty minutes per week of occupational therapy. *Id.* at 886. During the 2016-17 school year, the Does also began supplementing the District's speech and occupational therapy with private speech and occupational therapy provided by the Children's Therapy T.E.A.M. ("TEAM"). *Id.* at 1078.

In January 2017, the Does had C.B. re-evaluated by speech and occupational therapists at TEAM. *Id.* at 1021, 1070. The TEAM therapists recommended C.B. receive 180 minutes per week of speech therapy and continue receiving 120 minutes per week of occupational therapy. *Id.* at 1027, 1075.

In May 2017, the District prepared annual reviews for C.B.'s speech and occupational therapy. *Id*. at 929, 926. The annual speech therapy review noted that C.B.'s "[s]peech therapy indicates progress toward mastery of speech language goals and objectives; although, he did not master any of his goals or objectives." *Id.* at 929. The review recommended C.B. continue to receive speech therapy for 90 minutes per week. *Id.* The occupational therapy annual review stated that C.B. "has made good progress toward his IEP goals and objectives," though noted that he had mastered only one of eight objectives. *Id*. at 926. The review recommended C.B. continue to receive sixty minutes per week of occupational

therapy.  *Id*. at 927.  One month earlier, in April 2017, one of the District's occupational therapists evaluated C.B. and recommended he receive sixty minutes per week of school-based occupational therapy.  *Id*. at 1092.

The District revised C.B.'s IEP in May 2017 to provide 1440 minutes per week of special education, and 600 minutes per week of general education accompanied by an aide for all general education minutes.  *Id.* at 850.  The revised IEP continued to provide C.B. with ninety minutes per week of speech therapy and sixty minutes per week of occupational therapy services.  *Id.*  C.B.'s mother participated in the IEP meeting in person and expressed concern about C.B. attending a new elementary school in the upcoming year due to re-zoning.  *Id.* at 837.

When the 2017-18 school year began, C.B. was in the first grade and still under the May 2017 IEP.  A new IEP for C.B. was developed in January 2018.  *Id.* at 796.  C.B.'s mother did not attend this IEP meeting, but agreed for the meeting to be held without her.  *Id*.  At that time, the Does were checking C.B. out of school early four days per week so that he could attend private speech and occupational therapy sessions.  *Id*.  The January 2018 IEP noted that C.B.'s mother was "concerned about [C.B.]'s slow progress and behavioral problems."  *Id*.  Under the "Child's Needs" heading, the IEP stated that C.B. was "noncompliant...a large amount of the time" and that in general education classes he "participates 5% of the time and refuses the rest of the time, often becoming aggressive toward peers or the para-professionals who are with him."  *Id*. at 797.

C.B.'s new IEP provided ninety minutes per week of speech therapy, sixty minutes per week of occupational therapy, and reduced his time in the general education setting. *Id*. at 833–34. The IEP noted that C.B. had met a number of his IEP objectives and made some degree of progress in occupational therapy, speech therapy, and certain academic areas. *Id*. at 797–98. The IEP also showed that C.B.'s MAP reading score had increased from 131 to 146, and his MAP math score from 120 to 124, since the May 2017 IEP. *Id*. at 839, 798. By the end of the 2017-18 school year, the District had provided C.B. with 2,640 minutes of speech therapy, despite the IEP calling for 3,240 minutes. *Id*. at 1102. The District had also provided C.B. with 1,460 minutes of occupational therapy, despite the IEP calling for him to receive 1,620 minutes. *Id*. at 1106.

In March 2018, C.B. was evaluated by an outside psychologist following a referral from his physician. *Id*. at 962. The psychologist recommended C.B. be evaluated for applied behavior analysis ("ABA") therapy services. *Id*. at 965. In June 2018, C.B.'s physician referred him for ABA therapy "as per his mom's request." *Id*. at 960. C.B.'s insurer approved him to begin ABA therapy in September 2018. *Id*. at 1337. In November 2018, Thrive Autism Solutions ("Thrive") developed an ABA therapy treatment plan for C.B. *Id.* at 1188.

When the 2018-19 school year began, C.B. was in the second grade and still under the January 2018 IEP. A new IEP was developed for C.B. in December 2018 after C.B.'s IEP team found that he needed special education and related services in "all academic areas,

adaptive behavior skills, speech/language therapy, and occupational therapy." *Id*. at 764, 3621. The new IEP noted that C.B.'s mother "is pleased with [C.B.]'s academic growth" and that "[C.B] receives outside therapy as well as therapy at school," which by that time included ABA therapy. *Id*. at 764, 3622. The IEP noted that "[C.B.]'s behaviors affect his learning and performance significantly," though it also articulates some progress toward his IEP and therapy goals. *Id*. at 765–67.

The new IEP also reduced C.B.'s occupational therapy to thirty minutes per week, which was consistent with the recommendation from the District's occupational therapy annual review from earlier that same month. *Id.* at 793, 3594. C.B. was also evaluated by an occupational therapist at TEAM in December 2018. *Id*. at 1060. The TEAM therapist found that C.B. had met only three of seventeen goals, but noted that "[C.B.]'s prognosis for achieving the goals is good" and recommended C.B. continue occupational therapy for 120 minutes per week. *Id.* at 1068.

In January 2019, the Does began taking C.B. out of school two full days per week for private ABA therapy at Thrive. *Id.* at 332. Thrive offered ABA therapy services after school and on weekends, but C.B.'s parents elected to have C.B. receive these services during the school day. *Id*. at 317–21, 3702. At the conclusion of the 2018-19 school year, the District had provided C.B. with 2,515 minutes of speech therapy, despite the IEP calling for 3,240 minutes. *Id*. at 1100. The District had also provided C.B. with 840 minutes of occupational therapy, despite the IEP calling for him to receive 1,080 minutes. *Id*. at 1105.

6

III. LEGAL STANDARD

Under the IDEA, parents may file a due process complaint to challenge "the identification, evaluation, or educational placement of [their] child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). Complaints are resolved by a due process hearing conducted by the state or local educational agency or, if desired by the interested parties, voluntary mediation. *Id.* § 1415(e)–(f). The purpose of the due process hearing is to determine whether the child received a FAPE. *Id.* § 1415(f)(3). The burden of proof falls on the party seeking relief. *Sneitzer v. Iowa Dep't of Educ.*, 796 F.3d 942, 948 (8th Cir. 2015).

A party may seek review of the administrative proceedings by bringing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2). A federal district court reviewing an agency decision under the IDEA must conduct a de novo review to determine whether the aggrieved party is entitled to relief based on a preponderance of the evidence. *Id.* § 1415(i)(2)(C)(iii); *I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Schs.*, 863 F.3d 966, 970 (8th Cir. 2017). Courts, however, must give "'due weight' to the outcome of the administrative proceedings." *I.Z.M.,* 863 F.3d at 970 (quoting *T.F. v. Special Sch. Dist. of St. Louis Cty.*, 449 F.3d 816, 818 (8th Cir. 2006)).

IV. DISCUSSION

A. Statute of Limitations

As an initial matter, the hearing officer did not err in deciding that the statute of limitations allowed the due process hearing to reach only alleged violations occurring in the two years preceding the Does' due process complaint. Doc. No. 23 at 227–49. The statute requires "[a] parent or agency [to] request an impartial due process hearing within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint...." 20 U.S.C. § 1415(f)(3)©. The Eighth Circuit has also consistently applied a two-year statute of limitations period under the IDEA. *See In the Matter of Minneto v. M.L.K., by and through his Parents S.K.,* 2021 WL 780723, at *6 (D. Minn. Mar. 1, 2021). The Does argue that the hearing officer was required to make a factual finding as to when the Does 'knew or should have known' of the alleged FAPE denial, but neither the statute nor Eighth Circuit precedent impose such a requirement. Therefore, this order will not address alleged IDEA violations occurring before August 23, 2017, which is two years before the Does' due process complaint was filed. *See* Doc. No. 23 at 35.

    B.    <u>Deference to Hearing Officer</u>

The Does argue that the hearing officer made no material findings of fact to support his conclusion that defendants complied with the IDEA's procedures and provided C.B. a FAPE, and thus no deference should be given to the outcome of the administrative proceeding. Pls.'s Br. Supp. Mot. J. at 7–9, Doc. No. 26. While the hearing officer's order contains only a few sentences under the heading "Findings of Fact," it includes 39 pages of information under the heading "Relevant Witness Testimony." *See* Doc. No. 23 at 166–205.

His choice to reduce the witness testimony to what he deemed relevant, and include that distillation of testimony in his order, suggests his legal conclusions were largely based on the factual findings reflected in that section. "Due weight" must be afforded to the hearing officer's decision because he had an opportunity to observe the demeanor of the witnesses upon whose testimony he relied on to make his decision. *See K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 803 (8th Cir. 2011). This limited grant of deference is also appropriate because a district court should not substitute its own notions of sound educational policy for those of the school authorities that it reviews. *Id.*

    C.    <u>Procedural Violations of the IDEA</u>

The IDEA imposes both procedural and substantive obligations on school districts. To comply with the IDEA's procedural requirements, school districts must follow the procedures set forth in the statute to formulate an IEP tailored to meet the disabled child's unique needs. *K.E.*, 647 F.3d at 804. For a child to be denied a FAPE, however, the procedural inadequacies must (1) impede the pupil's right to an appropriate education, (2) seriously hamper the parent's opportunity to participate in the decision-making process, or (3) cause a deprivation of educational benefits. *Id.* at 804–05; 20 U.S.C. § 1415(f)(3)(E)(ii)(I)-(III). The hearing officer found that even if the District committed the procedural violations alleged by the Does, such violations did not result in C.B being denied a FAPE. Doc. No. 23 at 206–07.

The Does allege four procedural violations by the District. Doc. No. 26 at 9–23. A fifth allegation, that the District failed to implement C.B.'s IEP, will be addressed as a potential substantive violation. The first alleged procedural violation is that the District predetermined C.B.'s speech and occupational therapy minutes. *Id*. at 11–13. Specifically, the Does contend the District ignored recommendations from independent evaluators, and from the Does, when setting the speech and occupational therapy minutes in C.B.'s IEPs. *Id.* The statute of limitations restricts the scope of this allegation to IEPs developed for the 2017-18 and 2018-19 school years. After careful review, the Does' allegation that the District predetermined C.B.'s therapy minutes is not supported by the record.

The evidence indicates the Does were invited to participate in all meetings where C.B.'s IEP was reviewed or revised, and even C.B.'s outside therapists attended certain IEP meetings and consulted with the District. *See* Doc. No. 23 at 323–25. Moreover, each time the Does allege the District unjustifiably reduced C.B.'s speech or occupational therapy minutes, the new amount of therapy provided in the IEP appears to be consistent with a therapist's recommendation from an evaluation prepared by the District. To the extent outside evaluators recommended more therapy for C.B. than the District's evaluators, it is unclear whether they contemplated the additional therapy taking place in the school setting or as part of C.B.'s ongoing private therapy schedule. Furthermore, the District was under no obligation to follow the recommendations of any particular evaluator, but only to consider

that information, along with any concerns of the Does, when drafting the IEP. *See Fort Osage R-1 Sch. Dist. v. Sims ex rel. B.S.*, 641 F.3d 996, 1005 (8th Cir. 2011).

The Does' second alleged procedural violation is that the District failed to identify related services in C.B.'s IEP, and to specify the frequency, location, and duration of those related services. Doc. No. 26 at 13–14. This allegation relates to ABA therapy, which the Does argue should have been included in C.B.'s IEP because it was medically necessary. *Id.* at 14. While C.B.'s insurer presumably decided that ABA therapy was medically necessary for him, the IDEA does not require an IEP to include every medically necessary treatment a disabled child is receiving. *See* 20 U.S.C. § 1414 (d)(1)(A)(i). Here, the record lacks evidence that C.B. required ABA therapy to receive an educational benefit. *See* Doc. No. 23 at 556–58. C.B.'s behavioral issues clearly presented challenges for both the District and the Does, and C.B. likely benefitted from ABA therapy, but it does not follow that the District was required to include ABA therapy on C.B.'s IEP. *See Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607, 612 (8th Cir. 1997) ("IDEA does not require that a school either maximize a student's potential or provide the best possible education at public expense...only that a public school provide sufficient specialized services so that the student benefits from his education").

The Does' third alleged procedural violation is that the District failed to revise C.B.'s May 2017 IEP to address his lack of expected progress. Doc. No. 26 at 14–15. IEPs should be revised as appropriate to address a child's lack of expected progress toward annual goals

in the general education curriculum. 20 U.S.C. § 1414(d)(4)(A)(ii)(I). When C.B.'s IEP was revised in May 2017, however, he had made some progress toward his goals and objectives for speech an occupational therapy. *See* Doc. No. 23 at 837–39. The record does not establish that C.B.'s progress in May 2017 was less than expected for a child who was just finishing kindergarten and had only been diagnosed with autism eight months earlier. *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017) ("a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"). Furthermore, the evidence suggests the Does' primary concern in May 2017 was the possibility of C.B. regressing if was rezoned to a new elementary school for the 2017-18 school year, not lack of expected progress up to that point in time. Doc. No. 23 at 837.

The Does' final alleged procedural violation is that the District failed to ensure the IEP addressed how C.B.'s disability affected his involvement and progress in the general education curriculum. Doc. No. 26 at 16–20. Specifically, the Does contend that once the District determined that C.B.'s behavior was impeding his academic progress, it was required to conduct a functional behavioral assessment (FBA) and implement a behavior intervention plan (BIP). *Id*. While an IEP must address how a child's disability affects his involvement and progress in the general education curriculum, it does not specifically mandate an FBA or BIP. 20 U.S.C. § 1414(d)(1)(A)(i)(I)(aa); *See Lathrop R-II Sch. Dist. v. Gray*, 611 F.3d 419, 426 (8th Cir. 2010) (IDEA does not mandate IEP include behavior plan or behavioral

improvements). In as much as C.B.'s behavior impeded his own learning, the District was required to "consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior." 20 U.S.C. § 1414(d)(3)(B)(i). The record indicates that the District considered and implemented behavioral supports for C.B., but determined that an FBA and BIP were not yet necessary. Doc. No. 23 at 493–95, 558–59. C.B.'s progress during the 2017-18 and 2018-19 school years, while perhaps disappointing to the Does, further supports the District's position that C.B.'s behavioral problems were being adequately addressed. *See CNJ v. Minneapolis Public Schs.*, 323 F.3d 630, 642 (8th Cir. 2003) ("the fact that [the child] is learning is significant evidence that his behavioral problems have, at least in part, been attended to").

      D.     <u>Substantive Violation of the IDEA</u>

To comply with its substantive obligations under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. *Endrew,* 137 S.Ct. at 999. An IEP calculated to provide "merely more than *de minimis* progress from year to year" does not satisfy the substantive requirements of the IDEA. *Id*. at 1001. Courts reviewing IEPs, however, "must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Id*. at 999 (emphasis in original). The Does allege the District committed a substantive violation of the IDEA because C.B. made only *de minimus* academic and behavioral progress, and because they did not develop a BIP to address C.B.'s disability-related

13

behaviors. Doc. No. 26 at 23–24. As noted above, however, the record shows C.B. made progress in multiple areas under his IEPs, even if that progress was not ideal–or even satisfactory–to the Does. *See CNJ,* 323 F.3d at 642 (IDEA does not require a student make any progress at all, only that the student be provided an IEP reasonably calculated to provide educational benefit).

The Does further allege the District committed a substantive violation of the IDEA by failing to implement C.B.'s IEP. Doc. No. 26 at 20–22. The Does point out that the District failed to provide C.B. the amount of speech and occupational therapy required by his IEPs for the 2017-18 and 2018-19 school years. *Id.* Indeed, the IDEA obligates school districts to provide special education and related services in conformity with the child's IEP. 20 U.S.C. § 1401(9)(D). The record here, however, supports the District's contention that it only failed to provide C.B. the required amount of therapy because the Does pulled him out of school multiple days each week for outside therapy services. *See* Doc. No. 29 at 25–27. The record further suggests that the Does could have pursued private therapy for C.B. outside of school hours. *Id.* The Does undoubtedly chose to routinely pull C.B. out of school for outside therapy because they believed it to be in his best interest, but that unilateral decision will not be held against the District to find a substantive violation of the IDEA.

Finally, the Does allege that the District did not provide C.B. a FAPE in the least restrict environment ("LRE") as required by 20 U.S.C. § 1412(a)(5). The District contends that the Does did not raise this claim at the due process hearing and have therefore not

exhausted their administrative remedies with regard to this issue. Doc. No. 29 at 28–29. Whether or not the LRE issue was properly raised at the due process hearing is irrelevant because the record is devoid of any specific allegations concerning how the District violated this provision of the IDEA. I find by a preponderance of the evidence that the District did not substantively violate the IDEA by failing to provide C.B. a FAPE in the LRE. The hearing officer's conclusion that District followed the procedures set forth in the IDEA and provided an IEP reasonably calculated to enable C.B. to make appropriate in light of his circumstances is affirmed. *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982) ("If these requirements are met, the [school district] has complied with the obligations imposed by Congress and the courts can require no more").

    E.    <u>Plaintiffs' Remaining Claims</u>

Having affirmed the decision of the hearing officer on the IDEA claim, the parties requested I also decide any preclusive effect on the Does' remaining section 1983, ADA, and section 504 claims. *See* Doc. No. 19 at 2. The Does' ADA and section 504 claims are pleaded together and indistinguishable from one another in the Does' complaint. *See* Doc. No. 1, ¶¶ 49–50. These claims include that defendants failed to make reasonable accommodations for C.B. to receive medically necessary therapies, that they acted in bad faith or with gross misjudgment in depriving C.B. a FAPE, and that they denied the Does meaningful participation under the IDEA. *Id*. ADA and section 504 claims are subject to a more demanding standard than IDEA claims, and require a plaintiff to show more than the

mere denial of a FAPE. *See Monohan v. State of Neb.*, 687 F.2d 1164, 1170 (8th Cir. 1982). Preclusion applies if the resolution of the IDEA claims necessarily resolves the non-IDEA claims. *See I.Z.M.,* 863 F.3d at 972.

The Does' ADA and section 504 claims are precluded by resolution of the IDEA claim in the District's favor. This is so because the ADA and section 504 claims are subject to a more demanding standard and are intertwined with their allegations that the District failed to properly follow the IEP process and provide C.B. a FAPE. *See I.Z.M.,* 863 F.3d at 972 (precluding claims under the ADA and section 504 that "grew out of or were intertwined with" allegations of a school district's failure to properly implement an IEP). Preclusion is appropriate here even though the ADA and section 504 claims are governed by different legal standards. *See Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011). Accordingly, the Does' ADA claims and section 504 claims are dismissed with prejudice.

The Does' section 1983 claim alleges that they were denied due process as a result of ADE's failure to enforce the procedural protections of the IDEA. *See* Doc. No. 1, ¶¶ 31–48. This claim includes allegations that the hearing officer did not meet the minimum qualifications imposed by the IDEA, that he failed to make required findings of fact, and that he has a personal or professional bias in favor of school districts. *Id*. While my review of the administrative record required I decide how much deference to afford the hearing officer's decision on the IDEA claim, the Does' section 1983 claim involves due process issues distinct from whether C.B. was ultimately provided a FAPE. *See M.P. ex rel. K. &*

*D.P. v. Indep. Sch. Dist. No. 721,* 439 F.3d 865, 868 (8th Cir. 2006) (finding even ADA and section 504 claims of unlawful discrimination are not precluded if they are "wholly unrelated to the IEP process"). The Does' section 1983 claim is not precluded by resolution of the IDEA claim and is allowed to proceed.

## V. CONCLUSION

Plaintiffs' motion for judgment on the record [Doc. No. 25] is denied. The hearing officer's decision is affirmed with respect to plaintiffs' Individuals with Disabilities Education Act ("IDEA") claim. Plaintiffs' Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("section 504") claims are precluded by resolution of the IDEA claim and dismissed with prejudice. Plaintiffs' claim under 42 U.S.C. § 1983 ("section 1983") is not precluded and allowed to proceed.

IT IS SO ORDERED this 19th day of November, 2021.

_____
UNITED STATES DISTRICT JUDGE